Mr. Hastings? Mr. Chief Justice, and may it please the Court, forum selection clauses have been frequently used in contracts of all types. They should be enforced as written, and the enforcement of a contractual forum selection clause should not just be left to convenience, discretionary balancing tests.  forum selection case. Rule 12b3 and section 1406 of the United States Code provide appropriate and effective means for enforcing a contractual forum selection clause. The language of those provisions is written broadly. Congress used words like wrong, and the rule uses the word improper, which have plain and natural meanings that are broad and are sufficient to authorize district courts to act to enforce the contractual clause. Kennedy, is it common in the treatises or in the cases to say that a forum selection clause is a venue provision? I thought venue was something that the Congress determined. Your Honor, the cases do discuss it as a venue provision. One example would be this Court's decision in Stewart addressed a forum selection clause in a 1404a transfer analysis, which is clearly a venue analysis. In addition to that, with the 2011 amendments to the United States Code, Congress adopted a definition of venue. It's in section 1390. That definition says the place of litigation. I'm paraphrasing it, but it's a pretty straightforward definition. The legislative history of section 201 of that Act acknowledges that the definition was intended to make venue determinations easier and to make it clearer that parties could waive or adjust these types of provisions even by contract. Alito, in the Stewart case to which you just referred, the Court said, quote, the parties do not dispute that the district court properly denied the motion to dismiss the case for improper venue under 1406a because Respondent apparently does business in the Northern District of Alabama, which was not the jurisdiction specified in the forum selection clause. So what — if we were to write an opinion in your favor, what would you suggest we say about that? Your Honor, I believe the correct reading of that language is what the Second Circuit has said in the trade comment decision, and others have written on this, that Stewart, and in the text right by that footnote, that's footnote 8, I believe, the text right there said the immediate issue is how we address 1404a. And the way the majority of the circuit courts have read it is the issue in Stewart — this procedural issue that we're here on today was just simply not presented to the Court. And so the Court could very easily write a decision that acknowledges Stewart still controls on a 1404a analysis, but acknowledge that, like the majority of the circuits, that Stewart simply did not have to address this provision. Alito, that's true, but it means that the entire discussion in Stewart is beside the point. The Court wrote a decision about an issue that really never should arise because the party seeking, as you see it, the party seeking to enforce the form selection clause should proceed under 1406. So Stewart said, well, if you proceed under the wrong provision, this is how it should come out. It makes the whole decision essentially meaningless, doesn't it? Justice Alito, I respectfully disagree. And here's what the meaning of Stewart would be, as we understand it. First of all, under the facts of Stewart, the same situation would arise, of course, if a party waived their proper venue objection. That may be a narrow line of cases, but that would still apply in a case where a party doesn't assert the contract at first. But there's another place where Stewart would still apply. When a case is filed in the proper jurisdiction, here, if this lawsuit had been filed in Virginia, there would be a very limited place or exceptional circumstances for a court to look at a 1404a analysis and determine if public interest required something other than the contract clause. Alito, I don't see how that would work. This is the argument you made in your reply brief, that if this, if the case had been filed in the jurisdiction specified in the form selection clause, that court could nevertheless proceed under 1404a and transfer it back to the Western District of Texas, for example. That's your argument. Stewart. In exceptional cases, Your Honor. In exceptional cases, but 1404a says that a case can be transferred to a district where it might have been brought, and your argument under 1406 is that they couldn't be brought in the Western District of Texas. That's a place where there's wrong venue. And, Your Honor, the language of the statutes, particularly the language you were just referring to about might have been brought, needs to be read in context of the decisions from this Court. In Van Dusen, this Court held that that language, might have been brought, was a term of art. The Court has never reached that conclusion with respect to wrong or improper. And in Van Dusen, the Court said the might have been brought language was a term of art referring back to a congressionally chosen venue under 1391. And so when this plays out under 1404a, the Court, if the case is in the proper venue and we're on to the second issue of 1404a, the proper reading of the language would allow the Court, truly in exceptional circumstances, to follow, follow the language of the statute and send it to another place where Congress said the case could have been. And again, this is really the second issue in the case, we would emphasize that it's truly exceptional cases where parties have contracted for a forum. They've truly resolved the conveniences among the parties among themselves. But if the section 1391 says the following, Except as otherwise provided by law, not by contract, by law, this section shall govern, shall govern, the venue of all, all civil actions brought in district courts of the United States. And then it goes on to specify certain rules for where venue in a case can lie. So if I'm looking at that, I'm thinking, well, those rules apply and they can't be reversed or countermanded or whatever by contract, by parties' agreement, except to the extent that the contract can figure centrally into the 1404 analysis. But it's not appropriate in the 1406 analysis because, you know, the statute says what the statute says. Here is venue. And, Your Honor, the language of section 1391 in the first part, I believe it's 1391a where it has the language of shall govern in Federal courts, that's really no different than what this Court said in Stewart of Federal law controls venue in Federal courts. But the issue that comes up is that venue, venue is very important. Venue, even before the current statutes were written, was recognized as being a privilege for the litigants, there to protect the defendants. And even in Neerbau in the 1939, so almost a decade before some of the current statutes were written, this Court said venue is subject to disposition by the parties. That's only the what that tells us is that venue is a highly waivable thing. You can stand on your venue right, but you don't have to. My problem with your interpretation is you are allowing a private agreement to make a venue prescription that Congress enacted improper. Congress said it was proper. It may be that it should not apply in this case because the parties have consented to something else, but it's not a wrong venue. I mean, suppose the question had never come up. There wasn't a claim that this was a wrong venue. The case could have proceeded and it would have been a place of proper venue, right? Your Honor, if there was no objection raised, yes. But it doesn't become – it's a place of proper venue. There may be a reason why another venue is the one that should control in this case. But you can't make a private agreement that can't say what Congress says is proper is improper. Your Honor, in response to that, first of all, the venue rights have always been like many Federal rights, waivable provisions. And when a contract is made – That doesn't mean it's improper. It means it's waivable. And, Your Honor, the language of the word improper, improper is a broad term and it has a broad meaning. I'd like to focus on improper for just a second. We have two different words, improper and wrong, but improper is used in 12b-3. Congress didn't or the courts did not explain what that applies. In practice, that word is used for many different contexts. It's used to enforce form selection clauses. The majority of the circuit courts, in fact, more circuits than have weighed in on our favor, use that language to enforce foreign clauses and clauses requiring State court forms. It's used in a very broad context in order to force people's contract rights. It's even used in arbitration contexts. Although the FAA gives parties the right to move under the FAA, many parties raise their complaints under the 12b-3 because of the procedural impact of 12b motions, allowing parties not to have to answer complicated Federal cases and get to proceed to arbitration more quickly. Giving the language a plain and natural meaning allows the courts to essentially do justice and allow to streamline and have efficient running of cases and to enforce parties' rights and contracts. Kagan.              Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Do you think that parties by contract cannot create personal jurisdiction just like anybody can Twitter, or do you think that parties by contract can create personal jurisdiction where it doesn't exist otherwise?   Focusing on personal jurisdiction, not subject matter jurisdiction, yes, because parties can consent and contract to waive the personal jurisdiction objections. And, Your Honor, I believe that has been recognized by many of the circuit courts. Because consent is the basis for personal jurisdiction. Exactly, Your Honor. Just like the other. Could I ask what difference would it make to you if I thought the venue here is there was no cause of action in this circuit, as one of the amicus briefs proposed? What difference would that make to you? And, Justice Scalia, that would — Professor Sachs' brief certainly makes that argument. I would begin by acknowledging that that rule would be far better than leaving this to discretionary balancing tests. What difference it would make, it actually would be very favorable to my client because this case would have to be dismissed. We have concerns about that rule. That's why we didn't push that as our argument. The circuits have a great way to split it. Isn't that the problem with the argument? Both 1404a and 1406 provide for transfer. This Court has emphasized that it's one Federal system, and within the Federal system, the result shouldn't be dismiss, bring the case all over again, pay a new filing fee, instead of that, just transfer it to the appropriate forum. And that's what Professor Sachs' view leaves out, because the result, as you say, is it's only dismissal, no transfer. And, Justice Ginsburg, that is one of the — one of the concerns with the rule. But Professor Sachs' approach does, first of all, start off with the strong benefit of enforcing contracts. It's just not as effective as 12b-3, because when we're dealing with what's really at stake— Scalia, what if there's no personal jurisdiction? Okay. And the suit is dismissed because there's no personal jurisdiction. Would a Federal court transfer it to another court that has personal jurisdiction? Your Honor, under the current statutes, I believe the Court would have the discretion to transfer it based upon personal jurisdiction. Where is it's 1404a and 1406 deal with venue. They don't deal with personal jurisdiction. Your Honor, many courts have actually read 1406 to also allow for addressing personal jurisdiction. There's a circuit split on that issue. Mr. Hastings, has 12b-6 ever been used, to your knowledge, to deal with a case in which the question is which court the plaintiff should have brought the suit in, rather than whether the plaintiff has a viable claim in any court? Yes. Because it seems to me a bit of a category error. The 12b-6 is something, it's an on-the-merits determination about the viability of your claim. It has race judicata effect, whereas this is not. This is just a question of, like, did you bring the thing in the right place? And you should be allowed to bring it someplace else. And, Justice Kagan, the First Circuit has been using the 12b-6 approach to address whether the case is in the right place. No, I know that courts have been. I'm saying in, you know, except for this kind of case, has a court ever used 12b-6 to deal with a case of which court? Outside of the Forum Selection Clause context. But to deal with anything that's not an on-the-merits determination that precludes a case in any court. And, Your Honor, I'm not aware of a court doing it outside of the context of the Forum Selection Clause issue as the First Circuit has. I have one question here. It seems, because I start out for reasons I won't go into, thinking, well, perhaps it doesn't matter, frankly, you can get to the same result under any of these three approaches. But then one thing Professor Sachs says does bother me, that if we take your approach, then how do we deal with the problem of removal? I mean, you can only remove a case to a court which is in the district where the person or the plaintiff filed. Now, if there's a Forum Selection Clause, the defendant seems to me to be stuck, because he can't go to a – he can't go to another – he can't go to another court. He can't go to the court within the district because of the Forum Selection Clause, and he can't go into another court because of 1441a. So that argues to me that we ought to either take the 1404 approach or we ought to take Professor Sachs's approach, unless you have an answer to that. Roberts, I want to ask you about the removal issue, and the answer starts in section 1390C. And in 1390C, Congress said – Where can I find that? Chief Justice Roberts, it's 28 U.S. Code 1390C. It's not conveniently set forth in any of the papers, right? No, Your Honor, it's not. I did not know that this issue was going to come up. Fair enough. With respect to 1390C, Congress said – 1390C? Yes, sir. Yes, Your Honor. Congress said that these rules, with the exception of the transfer rules, do not apply in removal cases. Congress has answered the question. Removal procedure is governed by the statutes on removal. And yes, if you're in State court, there's one court you can remove to. This rule and this issue doesn't change that. But if you – if this case had been filed in Texas State court, for example, and was removed to the Western District, 1390C still says that the transfer rules – it says the transfer rules, which would also pick up 1406, could still apply to reallocate the venue for the lawsuit if there was a contract clause or if it was a – No, no, no. To explain, I'm sorry. I'll read it more carefully later. But how – it says you have to remove to the court for the district and division where the place of action is pending. So if it's filed in State court in Texas, you have to remove to the Texas Federal Court. Now, how do we get – and you can't go to the Texas Federal Court, according to you, because of the contract. Okay. Now, how – now, you explain how this provision over 1390C gets around that. And, Justice Breyer, I would respectfully disagree about whether you can get to the Texas court. In other words, you can remove to the Texas court, even though it says you can remove – you can remove to the district court despite the contract. Yes, Justice Breyer, but despite the contract. Because of the specific Federal statutes allowing for removal. They tell specifically where the removal must go. And so we're not suggesting that the court would have to go to Virginia. So what the court should say in Texas is, we have a contract which says you have to go to Virginia, but because of 1390A, we forget about the contract and we remove it here. That's what you're saying Texas should say. No, Your Honor. What I'm saying is the State district – if the parties were in the State district court and remove it to the Federal district court under the statutes, under 1390 – well, first of all, that's what the removal statutes require. 1390C would say the transfer rules still apply. The Texas district court, if we had our contract, should have said, now that you've removed this to Federal court, we must transfer this case to Virginia, because the transfer rules still apply. But what about the – suppose the plaintiff says, please dismiss this immediately because 1406 or, you know, because 1406 says you have to dismiss it, then it isn't proper here. And, Your Honor, under that circumstance, if it was a contract requiring a State district court for him, I think that's what I understand the question to be. No. No. The contract says you go to Virginia. Okay. They filed it in Texas State court. You tried to remove it to Texas Federal court. And, Your Honor. And they say, I'm very sorry, the contract that he loves says we can't remove it to Texas Federal court. And, Your Honor, the contract would not prevent the removal. But once the case was removed, the contract would control where the case – where the case would be allocated. Can I ask you this, Mr. Copsley? Just go ahead. In a forum nonconvenience motion, I say all the witnesses are some – some places. What is the statutory and or Federal rules of civil procedure basis for forum nonconvenience? Justice Kennedy, that's an excellent question, because the courts, when they usually rule on forum nonconvenience, do not specify that. There's not a Federal – there's not a State – You just cite Gulf Oil and that's it? In many times, yes. But a lot of times, parties do go ahead and cite 12b-3. That's often done by parties in litigation. If it's a State forum or a foreign forum, but – but 1404a is a codification of the forum nonconvenience doctrine. For the Federal courts, yes, Your Honor. Can I ask you this about Professor Sachs' argument? Doesn't it lead to the consequence – to the – doesn't it show that – wouldn't it mean that Justice Scalia's dissent was correct in Stewart and the majority was wrong in Stewart? Because if this is – if this is contractual, suppose RICO in that case had moved – had adopted – had taken the approach that Professor Sachs has recommended and moved for summary – moved to 12b-6 or summary judgment, that would be a contract issue. It would be governed by Alabama law. Alabama law says the forum selection clause is no good. And, Justice Alito, we do think there is some tension between Professor Sachs' position and the Stewart decision, because if Professor Sachs is correct and the First Circuit is correct, there really would be no room for a 1404 balancing issue. The issue, I believe, that you're asking about – Why is that? Why wouldn't 1404a continue to apply? Justice Scalia, if the contract – if the contract elevated this to an issue on the merits is essentially what 12b-6 does, then it becomes an issue not just about venue, it becomes an issue about merits, and so a venue allocation provision wouldn't change the fact that if the case was in the wrong forum. But it depends upon – upon the defendant. If he chooses to go the 1404a route, he could go that way, couldn't he? Well, Your Honor – He wouldn't have to move under 12b-6, would he? He wouldn't have to move under 12b-6, but – So it wouldn't necessarily overall skirt. But there's a potential problem here, and this is one of the practical issues with Professor Sachs' issue – approach. If it's an issue on the merits, it doesn't have to be raised right at the beginning of the case. A party could certainly move to transfer and do a lot of other things. But they could raise that issue as a defense on the merits of the lawsuit and have it resolved at trial after the entire proceeding had proceeded in a forum other than where the contract was required. I don't follow that. If it's an affirmative defense, you have to raise it or you lose it. You can't hold back an affirmative defense and in the middle of the trial say, oh, then there's an affirmative defense here. H.C. requires you to state. And, Justice Ginsburg, it certainly would have to be pleaded. And certainly there's an opportunity. You know, leave is freely granted in cases unless, you know, other circumstances arise. It's possible to plead it down the line. But most importantly, it's when do you get a ruling on that issue. And that's the problem. Breyer. What is the problem with this? You admit that if he goes to Virginia, he files a suit in Virginia. All right. Then he says, Judge, everything's in Texas. Please remove under 1404a. You know, go – send it down to Texas. And you agree that in an unusual case, you say, because you give a lot of weight to the contract, he could win and go to Texas, right? That's our position. That's your position. Fine. If that's your position, what conceivable difference does it make if he goes to Texas in the first place and then you say remove it to Virginia? I mean, it should work out the same way. It should work out that the balancing under 1404, you know, it gives you the – the factors should be the same, shouldn't they? Your Honor, the way this would work out is if – focusing on the 1404a issue, the real issue gets down to where does the lawsuit need to be filed, what rules are going to be in place, and if a party can just file in Texas because they want – they want to try to move it there for convenience. If they can just file in Texas, what they're doing is they're requiring a party who just wants to live there. It's a terrible thing. You have to say 1404a and the other case he has to say 1404a, and it – I mean, maybe it makes some tremendous practical difference. But what I – if it makes not much difference, I have three routes that seem to me all should work out the same way, and in favor of their route is the absolute language that Justice Kagan pointed out before, plus the footnote. Okay. So I'm thinking, hey, this doesn't make much – it's important to have a rule. It's important to have one clear approach. But as between the three, it shouldn't matter, and they should all reach the same conclusions. So let's go with the language of Stewart. All right. What about – now, what's the answer to that? And, Justice Breyer, first of all, I would agree with you that under this case, all three routes should have led to the exact same conclusion. That's – that is correct under this case, but that may not be in all cases. Why it matters is that parties should be forced to honor their contracts. And so if a party honors its contract and there's a very high standard, such as the exceptional circumstances standard for receiving a transfer, there are parties who are following their contract. It's unlikely you're going to have much litigation over transfers. Whereas, if a party can say, I can try my shot at a home court forum, file in violation of the contract, and then make the other party raise this issue and have to litigate a specific venue, we're going to have a tremendous litigation about venue. That's the problem. The law travels with – the law of the transferring State travels to the transferred State. So they've undone – they're taking Texas law if you go under 1404 to Virginia. And that would be a problem in many cases, Your Honor. And that would defeat the purpose of the venue selection to start with. That would be taken care of simply by saying Van Duzen v. Barrett does not apply when a party is acting in violation of a contractual provision. Van Duzen v. Barrett was intended to give the plaintiff plaintiff's choice of an initial forum. If the plaintiff chooses a forum in violation of contract, there's no reason why Van Duzen should apply. And, Justice Ginsburg, that points out that if the Court were to not just strictly enforce the contracts, it may raise as many new issues that this Court has not yet had to address. I'd like to reserve my time. Thank you, counsel. Mr. Allensworth. Mr. Chief Justice, and may it please the Court. We brought this $160,000 construction case in the Western District of Texas, which is where we performed our work, where the project's located, where all the witnesses reside, and where virtually all of the evidence is located. But, Mr. Allensworth, were you agreed not to bring it? Yes. So I'm going back to what Justice Breyer says. Let's suppose you're right about 1404. I think you have some pretty good arguments. 1404, it seems to me, shouldn't affect this case in the sense that you should have to – this was a negotiated contract. You got something for the fact that you accepted inconvenience when you brought a suit. And under 1404, the Court is perfectly entitled, the Court has to take that into account, that this was a negotiated contract, that you accepted inconvenience, and that you got something for your acceptance of inconvenience. The end, you have to live with your contract. No, Your Honor. We have a contract, and we are having to live with it in the sense that we're up here now 15 months after the district court ruled that we were supposed to – we should – after – 15 months after the district court denied the motion to transfer. What we – and we did negotiate – and this is – those are indeed the terms of our contract. However, the – we felt that any court following Stewart and 1404 would weigh the interest of justice in the decision whether to grant the transfer or not, and indeed, that's exactly what the district court asked.  Alitoson The interest of justice that the district court weighed almost all boiled down to the interests of your client. The inconvenience of witnesses. Well, Atlantic Marine, to the extent we're talking about their witnesses, they're not concerned about the inconvenience of having their witnesses go to Norfolk. But your witnesses, the other witnesses are your witnesses. So that's a factor that goes to your convenience. Compulsory process to produce witnesses. Same thing. So what were the public interests? What were the interests that were weighed here that are not the interests of Jay Crow? If I might, Your Honor. First off, the district court didn't give any shrift to our witness. He was concerned with the non-party witnesses who were not a party to the discussion. Well, if they're not your witnesses, then they're Atlantic Marine's witnesses. So why should that be – why should the inconvenience of Atlantic Marine's witnesses be a factor that weighs against Atlantic Marine's position that the case should be tried in Norfolk? They were neither Atlantic Marine's witnesses nor our witnesses. They were non-party witnesses, and the issue that Judge Higginbotham addressed in the Fifth Circuit. Just volunteer witnesses? Are they just going to walk in the courtroom and say, I'd like to testify? Exactly. Surely they're one size or the others, aren't they? Your Honor, I will – What kind of proceedings do they have in them? Your Honor, our point is that if it's in Texas, they can get in their pickup and drive to the courthouse and testify, and if this case is moved to Virginia, those witnesses essentially are unavailable to us. Who is going to call these witnesses, you or Atlantic Marine? We'd be the ones calling them. You do. So they're your witnesses. The fact that they don't work for you is immaterial here. So let's say they're out of the picture. Now, what else is left? What other public interests are involved? The law of Texas, which we think applies to this case, which the district court I think the Texas contract law is so arcane that the judges in the Eastern District of Virginia can't figure it out. Is that right? I wouldn't suggest that, Your Honor. Breyer. So why then couldn't you go to Virginia, if all these factors – I mean, maybe the jury has to take 42 visits to the bottom of an oil well shaft. I don't know. I mean, there could be something that would weigh in your favor. I don't know the case. So why not go to Virginia and then file a 1404 motion? And it should reach the same result. Whether you go to Texas and ask to stay there or whether you go to Virginia under 1404a, you win this case, let's say, or whether you go to Virginia. It should get to the same place, shouldn't it? Your Honor, in some ways, this is exactly what we're worried about. The same place as 15 months after the courts ruled on the transfer motion. So it's actually your expense, because you would have to go to Virginia and you would have to file the motion. Maybe you can do it by mail or you'd have to, but I don't know. We filed a motion. If we filed this lawsuit in Virginia and filed it simultaneously with a 1404 motion, by their lights, the Court, as I think one of the Justices pointed out, couldn't transfer it back to Texas anyway, because by their lights, venue's improper anywhere except Virginia. No, no. They're not saying they said that you could make the 1404 motion in Virginia. And they think it would only be granted in an exceptional case, but that's their opinion in that. And so it should come to the same conclusion. They aren't borrowing you from that on their view, but my thought is that if all these things come to the same result in the end, and you just need one rule, we have something pointing on their side, or your side, which is the Stewart footnote and that language of the, you know, the absolute language of the venue statutes, and you have something pointing on their side, which is if we count by numbers, five circuits are in their favor and only three in yours. All right. Help me. If there wasn't the – if there hadn't been a forum selection clause in the contract and we'd filed suit in Texas, it's inconceivable that they could have successfully moved the case to Virginia. The only thing going in favor of this case going to Virginia is that forum selection clause. Roberts. Well, that's kind of a big thing, isn't it? I mean, that's what the whole thing is. It's a significant factor. It's sensible that the district court stood up. It's a significant factor. And the problem, the difference, all things don't lead to the same place. 1404 says to the district court, look at a hodgepodge of things, including the interest of justice, and figure it out, and, you know, maybe they'll give the contract some weight or maybe they won't, and if they do, it's not clear how you weigh the contract against the interest of justice. It gives a broad discretion. It says they may transfer. 1406 is an entirely different animal. It says you shall dismiss or transfer. It's sort of a, you know, you have the safety valve to transfer. And I don't know why you so cavalierly dismiss, say, oh, it's in the contract, of course, but we've got more witnesses. It is in the contract, Your Honor. It is in the contract. Because it's in the contract, we didn't get the deference that otherwise the plaintiff would get on selection of venue. Well, that couldn't have come as a surprise. No, sir. And we haven't attacked the clause on Brayman standards. We haven't claimed it was induced by fraud or that it was overreaching. We accept that. The question that we've got is whether the Federal judiciary has to accept that contract clause as guiding their decision. Kagan. Well, it does in this way. It does in this way. 1404, as Justice Ginsburg said, it's a codification of forum nonconvenience law, which is a balancing of private and public interests. It seems to me what Justice Alito said was absolutely right. You have given up the ability to claim private interests here by virtue of your choice to sign that contract. The only thing that could weigh in the balance against that is if there's some – something that has nothing to do with your convenience, but is instead a feature of – of something about why it's important to the judicial system, to the public interest, about keeping a trial in one place. And as Justice Alito suggested, you have not been able to point to anything, nor would there be anything to point to in most cases involving forum selection clauses. In most cases, there wouldn't be. And that's why in most cases the clauses are enforced, and that's why I don't think you've seen one of these for 25 years. The reason that we've got – that we think our case is somewhat unique is that it involves a construction project in the district in which we filed suit. All of the witnesses are there. Virtually all of the physical evidence is there. It's subject, if we stay in Texas, to Texas law. And for those reasons, if the case is going to get sent to Virginia, the – the systemic integrity of the system, I think, would put it in place. The enforceability of these clauses is critically important to a lot of modern commerce. If you – I don't know what the details are here, but a lot of times you're a company and you're doing business now all across the country. And you say, I don't want to do business all across the country. If I'm going to get dragged into different courts who knows where with different – where the juries are different, I want to do business around the country so long as if I'm going to be sued, it's right here. So I'm only going to do business with people who are willing to say, if I have a problem, I'll sue you right here. That's – that's critically important to modern – modern commerce. And the idea, well, we're going to let a court say, well, but there are a few more witnesses here, you know, it's convenient to them and all that, that seems to be throwing a significant wrench into the process. Your Honor, I don't view it as a wrench, as opposed to an opportunity or mandate from Congress to the federal courts to exercise some discretion in deciding whether to enforce these clauses or not. Stewart v. Winkler. Your adversary is not taking that discretion away. It's saying – your adversary, I understand – is conceding that Virginia has the ability to apply 1404 in its judgment, but you should honor the contract. I have one fundamental problem, which is slightly different. Under Brennan and Carnaval, if the forum selected was arbitration or a State court, then the court has no 1404 power. It must transfer to those venues. If we accept 1404 as applying, then we're disfavoring commercial parties from picking federal courts because they're going to have to accept that a non-selected venue will have the power to make the decision whether to transfer or not. That seems to me to invite, and there may be people who think that's a good thing, get cases out of the federal court even if they're international commercial cases. But isn't that what you're inviting? I think, Your Honor, I'd say that's a possibility. I'd say, on the other hand, that the arbitration example that you brought up, that's governed by a separate statute anyway. So the Federal Arbitration Act is going to govern whether that – whether the arbitration clause ought to be enforced. Ginsburg. The clause here allowed suit in State or Federal court. Suppose the clause, the forum selection clause, had just said, all disputes shall be litigated in the circuit court for the City of Norfolk. It doesn't say anything about the Eastern District of Virginia. What would be the result then? The court would have to dismiss our case. And equally? He couldn't transfer it to – he can't force that into a Virginia circuit. And the same thing if the choice was of an arbitral form, then you recognize in those two cases the result would have to be dismissal. Yes, Your Honor. What would be the authority for dismissing the case if it had specified to State court? I think it would be the same one as in Brayman, which didn't – in the Brayman, which didn't mention 1404a. No, Brayman is an admiralty case. Why wouldn't it just be a forum nonconvenience? It would be, and I've forgotten which Justice raised the question about. 1404a is a codification of forum nonconvenience. In the absence of that, the case would just be dismissed. Yes. I mean, 1404 is just if it's a – if it says go to a – if the contract clause specifies a Federal court, it's a 1404 motion. If it specifies a State court, it's a forum nonconvenience motion. With the same result. I say the same result. Dismissal would be the remedy. That argues, then, and may be slightly against you. I'm sorry? The – if in fact you specify a State court, if in fact you specify a foreign court, if in fact you specify arbitration, you agree in those instances you're going to use forum nonconvenience or you're going to use 1406. But you're saying where you specify a court in a different State, namely a Federal court in a different State, there you use 1404. Well, it's not 1406. It's just forum nonconvenience, which is the same. Yes, it was forum nonconvenience. Oh, you use forum nonconvenience in all three. You don't use – I mean, they specify a State court. Because the 1406 wouldn't apply because of the cause. They say venue is a State court. Use forum nonconvenience in all those. Okay. Use forum nonconvenience in all those. But you use 1404 if they specify another Federal court. That's what – that's what that's. You use 12B3, not 1404. In those other cases, you use 12B3. Yes, yes. But my point is you're using something else. So they would say, well, let's have it the same, you know, okay. I see the answer. Forget it. No, but there's a – that raises a larger question that if I could address for just a second, and that's the systemic integrity of the system. If you're going to transfer a case to – within the system to another Federal court that's going to have to hear the case, one like this one where he's likely going to have to hear it without witnesses or certainly without live witnesses and to render a judgment based on facts that were developed 1,500 miles away on a project that's that far away, that does implicate, I think, the integrity of the system and that ultimately a Federal judge is the one that's going to have to write the take-nothing judgment if I can't scare up the witnesses to be in Virginia. Don't put me in the group that thinks you can use foreign nonconvenience when you have a foreign selection clause for a State court and suit is brought – attempted to be brought in a Federal court. I mean, if it's in the Federal court, that is the most convenient court. I mean, let's say it's in a different State where all the witnesses are. I think it's very strange to say that because there is a contract provision requiring it to be brought in a State court, this court is an inconvenient court. I – do you know that the document of foreign nonconvenience has ever been used that way? No, sir. No, Your Honor, no, I don't. And I confess I haven't thought through the question of if it just said it's in a State court. Breyer. Do you know the answer? This is another – I keep thinking they should all come to the same conclusion. But then what about this point, Justice Sotomayor raised? Suppose you sue in Texas. You know, you get there. But the contract, let's say, was a different contract from yours, but it just was made in Nevada. Everything about this concerns Nevada. Are they really going to use Texas law to interpret the contract rather than Nevada's? I would have thought that the choice of law question is a different question, and where you sue should be irrelevant to the choice of law question, except insofar as – I don't know, maybe you looked at the – Van Dusen said that the law moves with the – with the – Justice Sotomayor, I don't think the choice of forum was to be respected, but if the plaintiff chooses to form in violation of contract, the whole rationale in that case falls. Your Honor – Because it was to honor the plaintiff's choice of forum. Well, the contract says the plaintiff doesn't have a choice. Your Honor, the contract, as Judge Higginbotham pointed out, doesn't have a selection of law – of law clause. They put – it's got every other dispute resolution clause that could be in there to make it difficult for us to get this case to a court, but it doesn't have a – it doesn't have a choice of law provision in it. But the only reason that Van Dusen came out the way it did was, I think it was that Justice Black said, the plaintiff's choice of forum merits respect. It doesn't merit respect when the plaintiff has agreed that the suit will go forward someplace else. I don't recall. I'm sorry. That issue has not been decided by him. If – if 1404 is the correct procedural route, why shouldn't the rule be something like this? Where there is a forum selection clause, the burden is on – the burden of trying to establish venue in some other jurisdiction is on the party opposing the forum selection clause, not the party that's invoking the forum selection clause. And the only factors that can be considered against the forum selection clause to result in an exceptional case where that wouldn't be honored are factors that have nothing to do with the convenience of the party that doesn't want it tried in the selected forum or with the likelihood of success of the party that doesn't want it tried in the jurisdiction specified in the forum selection clause. So in your case, if there had been a hurricane that wiped out the courts of the Eastern District of Virginia for some period of time so no cases could be tried or there was an incredible backload of cases there that would prevent the case from being tried, maybe that would be – those would be something that might amount to an exceptional circumstance. But everything else is off the board. What's wrong with that? First off, on the validity of the clause, we acknowledge we'd have the burden if we were trying to avoid this clause on the ground – on whatever grounds, on any brahmin grounds, or we'd gotten cheated into it or anything like that, we'd have the burden on that. We didn't try to carry that burden. We're not attacking the clause. They have the burden on the main case – on the transfer itself, but their – But why should that be, whether it's a forum selection clause? I don't think that it's even a matter really so much a burden as it is a weight. And you all have already spoken on that, where you said that it's – that clause is to get significant weight. It ought to be central to the analysis, but it's not dispositive. And our contention was that the clause was not dispositive, but that every – every factor that possibly could go – militate against transfer in this case to Virginia existed. And that's why the Court, given appropriate deference to the clause, to that clause, hearing what the evidence was and deciding, as you would have been a Virginia court to make that decision instead of your friendly down-home Texas court, and that's – you know, that was why the forum selection clause was put in there. It doesn't seem to me such a stretch as you think it is to say that the venue is improper when you have agreed that venue would not lie in this Court. We can't confer venue. We can't – we can waive venue, but we can't make improper venue. So the question is, is it improper when it's been waived? Is it improper for a court to acknowledge venue when the party has said, I cannot be – I cannot bring my suit in this Court? I don't think it's a terrible stretch to call that improper venue. However theoretical a venue is decided by statute, of course it is. But people may waive it, and when people have waived it, I don't know that there's a great interest in saying that, nonetheless, the venue remains proper. It seems to me you've given it away, and it ought to be – it ought to be the court where the parties agreed that suit would lie that would decide these change of venue questions. The provision need not be absolutely dispositive, but to the extent it isn't, that is a call that ought to be made by the jurisdiction that the parties agreed to. The whole litigation ought to begin there. Scalia. They shouldn't have to litigate this change of venue provision in a court where the parties agreed they would not appear. It seems to me terribly unfair. There's a couple of factors on that, Your Honor. First off, the rule that I think my colleagues here are calling for effectively emasculates 1404 and takes the Federal judiciary out of it. The question – and I follow your question about the propriety of the venue. Scalia. Why is that? Why is that? Why can't the court where you agreed to be sued apply 1404? Another reason for that is that our contract has a one-way arbitration clause in it, which they have – which the Petitioner claims not to have waived. If this case is decided – it goes to Virginia, if we file the case in Virginia and they immediately demanded arbitration, the case wouldn't be arbitrated, but under the FAA it would be sent to an – it would be the court in Virginia would appoint an arbitrator, presumably in Virginia. And under the FAA, we don't necessarily even have the right to take depositions to provide – to move to get the evidence before the court, even in depositions. We'd rather have the case decided in Texas on a $160,000 case, and I know that's  Sotomayor, are you saying that by filing in Texas you're not going to arbitration? No. If we go to arbitration, we go to arbitration in Texas. We don't have any complaint about that. What we don't want to do is to go to arbitration in Virginia, which it does not have – and in this contract, for everything it's got in it, it doesn't have a clause  or forum clause for the arbitration. There is for litigation, but not for arbitration. So what's more favorable about Texas other than your convenience? What's more favorable about arbitration in Texas other than your convenience? That's the only thing. It's convenient for you to be in Texas. It's convenient for us. The arbitrator can drive out to the project and draw his own conclusions about what – about how the thing was built. He can talk to the witnesses who are within his subpoena power or the subpoena power of our district court in Texas to show up. Yes, sir. Breyer. I just like, if you want, to give you a chance to take what I – I think Professor Sack says, look, there is a way which you can both follow the statutes literally and say, well, venue is here, and also get the place to the right forum, respecting the contract. Just say it as an affirmative defense, which Justice Ginsburg says the First Circuit has followed this approach. You put it in the complaint, the answer, and once it's in the answer, the judge can put it front and center. Indeed, in case he forgets to do that, the defendant will remind him. And so you've got to get to the right court and let's decide this affirmative defense thing first. And now we're back in the same place. What do you think of that? I think that that's going to unnecessarily complicate this. It gets into – raises some difficult to eerie questions about which – difficult to eerie questions, which the Court, I think, successfully avoided with its decision in Stewart. I don't think that 12b motions are particularly appropriate places to decide these contract issues. And it eliminates the 1404 gatekeeper role that the district court otherwise could be providing and was providing. Professor Sack says that in the case of any disputed facts on a 12b6, you would have to have a trial. Do you agree with that? Yes, Your Honor. And I think that he underestimates the ability for resolute counsel to raise disputed facts that would otherwise prevent the summary judgment practice that he suggested in the 12b6. Well, what facts are in the normal case, what facts are going to be pertinent? I mean, you've got the contract there. I mean, I suppose you can always say we're entered under duress and all that, but that wouldn't seem to me to be typical in the normal commercial case in which these provisions are critically important. What facts are going to be there? I think there might be a question of materiality. There might be a question of what type of materiality. How material that clause was to the party's contract or whether you were going to try to have separability and to focus exclusively on that clause. Well, the venue provision, I mean, if they go to the trouble of putting a venue selection, forum selection provision in, it seems pretty material. It might or might not, depending on whichever State law applied, whatever the State law was, that would be under State law to decide on the materiality, what the effect of the prior breach is. We've been – this case has been cast in Manichaean terms about our breach of the contract by failing to file suit in Virginia. The only written – the only handwritten clause in this entire contract, which is in the appendix, I think, at page 16, is the one that says what the price is. What brings us here to the Federal system is not for a declaratory relief or to make new law on venue. It's to collect $160,000. That clause, I think, ultimately would be weighed, might be weighed, depending on the court, if it was to – if the case was being decided on purely by contract. Sotomayor, the only people collecting that $160,000 are going to be the lawyers. I wish. Sotomayor, you took a contingency case at a contract level? And the other thing, as Professor Sachs points out, the – as he points out, and Justice Haynes, Judge Haynes did at the Fifth Circuit, well, they can file suit for us for breach of contract and the expense that we've put them to. Yes, I think they probably could. We at least get a $160,000 head start on that, and they can bring that as an offset to our claim if they want to. We disagree with the question of whether it costs them any more to litigate in Texas than it would in Virginia anyway. They're going to have to hire a law firm. If we litigate in Virginia, they're going to have to send a lot of – a batch of lawyers back to Texas to defend the depositions that we'd have to be taking there. I don't know that this case costs any more to be litigated in Texas, where the witnesses are available and where they might not have to be deposed, than in Virginia, where they have to move – where they have to ship them across the country. If there's no further questions, thank you, Your Honor. Roberts. Thank you, counsel. Mr. Hastings, you have four minutes left. Thank you, Mr. Chief Justice. I have just a few brief comments. First, the parties bargained for the right result and they bargained and reached a contract that should settle the issue of conveniences and where this case should be litigated. Stewart has an important observation that I think needs to be emphasized. Even under a 1404a analysis, the majority in Stewart said the Bremen is still instructive. And if it's instructive on anything, on any rules enforcing a contract, it should be instructive at this level. The burden should be on the party trying to get out from their contract. The Fifth Circuit misallocated the burden. The burden should also be a high one. It really should require exceptional circumstances or perhaps even more. And it should not be a case where a party can avoid its contract based upon inconveniences that were foreseeable at the time of contracting. For example, the fact that J.Crew hired Texans to work on its project. It knew what the project was about and what it would need to do, and it should not be able to rely upon hiring Texans to change the deal it negotiated with my client. There needs to be a clear rule that allows the courts to hopefully answer the questions about contracts and venue so we all can stop litigating these issues and know the right answers and avoid inundating the courts with motions to transfer for parties wanting to renegotiate contracts. Since the Third Circuit and the Sixth Circuit and now the Fifth Circuit have adopted the minority position, there's been a proliferation of litigation when a contract already answered the question. We cited many cases in our cert petition in a footnote, and I know there's been many more since then. And those are the ones you can find published. That doesn't even mention the ones that are unpublished. And so a clear rule needs to be in place to avoid these problems. Justice Kagan, you raised the issue of form nonconvenience as perhaps the answer as to what would happen for a State or foreign contract loss. I wanted to briefly touch on that because I don't believe that's the right answer. The Bremen looked at a case that came up as a form nonconvenience case and said, we're not going to use the form nonconvenience test for enforcing a contract requiring litigation in international forum. They resoundingly rejected the form nonconvenience approach, and I believe the circuit courts have read Bremen as rejecting that approach. If that were going to be the approach to answer the problem created by the Fifth Circuit for forum and State courts, what we'd end up with is a new common law approach, whether called form nonconvenience or called something else, that looks nothing like form nonconvenience and probably a whole new line of litigation over other things. Kagan This took my point at least. Maybe I didn't express it clearly. Bremen comes up on a form nonconvenience motion, and the Court says, yes, the contract controls, quite properly so. So, you know, the fact that it comes up on a form nonconvenience motion has nothing to do with the question of whether the contract controls, where people have negotiated for a certain set of things, and there's no exceptional public interest otherwise. Waxman And, Justice Kagan, following Bremen, the courts have the lower courts have recognized that what essentially Bremen is doing is saying form nonconvenience is not the right approach. And so instead of a common law vehicle to answer this issue, we submit that the right answer is right there in the rules already. It's 12b-3 is the best answer. Section 1406 allows the Court also to address this issue. Honestly, Rule 12b-6, in Professor Sachs's approach, is much better than leaving these issues to balance people. Kagan Can I ask you one last question about 12b-6? Waxman Yes, Your Honor. Kagan Which is, you know, when 1404 is in, suppose, a State which does not recognize these clauses. 1404 trumps that, according to Stewart, but if you were under 12b-6, you would have to go to what Justice Scalia does in the Stewart dissent. I think you would have to go to a twin aims of Erie analysis. And in that circumstance, it seems to me that the State law would come out the victor. Isn't that right? Waxman Justice Kagan, the only way I know how to answer that question is I do not know how the Professor Sachs approach can actually be reconciled with Stewart. There are significant tensions in how that plays out as an issue that I do not know how it plays out, but I suspect it would result in lots of litigation. Sotomayor If it's under 12b-3, then Stewart stays, and it's Federal law that controls and the judge decides, right? Waxman Yes, Your Honor. And that's why we're asking this Court to follow the majority approach on this issue. Roberts Thank you, counsel. Counsel. The case is submitted.